UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 07-90-GWU

STEVE NIECE,                                                                                                PLAINTIFF,

VS.                                   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

07-90   Niece

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Steve Niece, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of insulin-dependent diabetes mellitus with peripheral neuropathy.  (Tr. 18).  He determined that, beginning July 14, 2005, the plaintiff was incapable of performing work existing in the economy, and a finding of "disabled" was appropriate.  (Tr. 20-2).  However, for the period between February 8, 2004, the plaintiff's amended alleged onset date (Tr. 321), and July 13, 2005, the ALJ determined that Mr. Niece retained the residual functional capacity to perform his past relevant work as a machine operator, tube handler, and laundry worker, and was not entitled to benefits.  (Id.).  The Appeals Council declined to review, and the plaintiff appeals the unfavorable portion of the administrative decision.

At the administrative hearing, the ALJ asked a Vocational Expert (VE) whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "medium" level exertion, and also had the

following non-exertional impairments.  (Tr. 363).  He: (1) could not climb ladders, ropes, or scaffolds; (2) needed to avoid even moderate exposure to hazardous machinery and unprotected heights; and (3) needed to avoid even moderate exposure to extreme cold and concentrated exposure to extreme heat.  (Tr. 364).  The VE responded that with this hypothetical situation, Mr. Niece could perform any of his past relevant work activity.  (Tr. 365).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Niece alleged disability due to insulin-dependent diabetes, heart disease, retinopathy, renal insufficiency, foot problems and "nerves that run on the outside of spinal cord."  (Tr. 61).  He testified that he had been able to work until February, 2004, when he had a heart attack.  (Tr. 321, 325).  He had undergone bypass surgery at that time, but in the past year before the April 13, 2006 administrative hearing, was having chest pain again, which he thought was cardiac-related, and also had pain from his sternum, which had not healed properly.  (Tr. 328, 340, 347).  Mr. Niece testified that he had been a diabetic who had used insulin injections all of his life (Tr. 346) and had been given special breaks because of the problem at his work (Tr. 326).  In January, 2006, he was hospitalized when his doctors were changing the type of insulin that he took due to an allergy to one of the medications.  (Tr. 334).  His blood sugar still had not been controlled since the episode.  (Tr. 335).

He was currently taking medications for depression, which were somewhat helpful. (Tr. 337).

The plaintiff's sister, Jean Mitchell, testified that she saw her brother every other day since his open heart surgery in February, 2004 and helped him with household chores and daily activities. (Tr. 352-3). She testified that she had been doing significantly more since January, 2006. (Tr. 354). She described the problem causing the hospitalization in January, 2006 as being the result of her brother having a hard time adjusting to new insulin, after the kind of insulin he had used all of his life went out of production. (Tr. 356). She further testified that he had had problems on his old insulin at times, also, and had to be taken to the emergency room. (Id.).

Medical evidence in the transcript shows that the plaintiff was diagnosed with unstable angina in February, 2004 and underwent a seven vessel coronary artery bypass graft. (Tr. 125). His cardiac surgeon, Dr. Raymond Will, stated on February 25, 2004 that he would recommend Mr. Niece remain off work for a full three months to complete the healing of his sternum. (Tr. 175). He was restricted from excessive upper body movements and lifting over ten pounds for the three-month period. His return to work would be determined at a later date. (Id.). Dr. Will's office notes go only to March 25, 2004, at which time he stated that the patient looked much better, but he was considering disability due to blindness. (Tr. 179).

07-90   Niece

The plaintiff testified that he had been forced to stop seeing Dr. Will due to a lack of medical insurance.  (Tr. 329).

The plaintiff underwent a detailed vision examination by Dr. Norman Radtke on May 21, 2004.  (Tr. 182).  Mr. Niece's distant vision was 20/50 on the right and 20/40 on the left, while his near vision was 20/100 on the right and 20/70 on the left. (Id.).  There was no evidence of background diabetic retinopathy, and, although decreased visual fields were noted, Dr. Radtke stated that this was not consistent with the findings based on the examination of his retina.  (Tr. 183).  He recommended further testing to determine whether there was any true retinal pathology, and suggested a return only as needed.  (Id).  No functional restrictions are suggested.

Dr. Rami Kahwash conducted a consultative examination of the plaintiff on July 17, 2004.  (Tr. 186).  Mr. Niece reported that following his bypass surgery, his anginal pain had gone completely, but he still had musculoskeletal pain around his surgical wound every time he took a deep breath.  He was not being followed by a cardiologist because of no insurance, but continued to smoke one pack of cigarettes a day.  (Id.).  He was using insulin twice a day, and his blood sugar was over 200 in the morning and in the afternoon.  He also claimed to have an impairment in his renal function due to diabetes that was exacerbated by contrast dye he received during his heart catheterization, but denied any recent change in his urinary output,

and also denied any lower extremity swelling or shortness of breath.  (Id.).  Dr. Kahwash's examination showed elevated blood pressure, but Mr. Niece's vision was 20/25 in both eyes without glasses and there were no funduscopic abnormalities.  (Tr. 188).  His heart sounds were normal and there were no motor, sensory, or reflex deficits, no swelling of the extremities, and no musculoskeletal abnormalities.  (Id.).  He advised tighter control of blood sugar and frequent assessment of kidney function, but found no evidence of significant physical restrictions.  (Tr. 188-9).

Two state agency physicians reviewed the evidence at this point and concluded that the plaintiff could perform medium level exertion with non-exertional restrictions consistent with the ALJ's hypothetical question.  (Tr. 192-210).

Medical evidence between the completion of the opinions of the state agency reviewers and the ALJ's selected onset date of July 14, 2005 is very limited.  The plaintiff had an emergency room visit on November 23, 2004 complaining of pain in his feet, left foot numbness, and depressive symptoms.  (Tr. 212).  He reported that he was divorced, was staying with his mother, and his wife had custody of their children; he could not continue seeing his family physician because of a $600.00 bill.  He also noted no cardiac symptoms.  (Id.).  The emergency room physician noted that Mr. Niece was tearful, in mild to moderate pain, but had equal reflexes and sensations in his legs, although the posterior tibial pulses were absent.  (Tr. 212-13).  The physician prescribed medications, stated that he would help the

plaintiff set up a payment plan with his family doctor, and referred him for mental health counseling.  (Tr. 213).  Mr. Niece apparently did return to his family physician, Dr. Mark Sander, on January 24, 2005, but unfortunately his office notes provide little detail.  (Tr. 233).  Mr. Niece was complaining of left foot pain and numbness as well as pain in both shoulders, but apparently the only abnormal findings reported by Dr. Sander were high blood pressure and stocking glove neuropathy.  Although he noted that Mr. Niece was having a new hearing for disability and "needs sheet [with] limitations," no restrictions are given.  (Id.).

The ALJ selected an onset date of July 14, 2005, which coincided with another emergency room admission after Mr. Niece experienced a hypoglycemic episode and became unconscious.  (Tr. 216).  He was discharged with a diagnosis of "acute cephalgia."  (Id.).  Subsequently, in January, 2006, the plaintiff began treatment with Dr. Sounya Janardan, who provided a residual functional capacity assessment in March, 2006 which limited Mr. Niece to less than full-time work.  (Tr. 237-47).

In determining a claimant's onset date, the Commissioner is not required to provide evidence that would eliminate a claimant's alleged onset date as a possibility, but there must be substantial evidence to support the onset date selected by the ALJ.  Willbanks v. Secretary of Health and Human Services, 847 F.2d 301, 303 (6th Cir. 1988).  The plaintiff asserts that, while his main impairment

07-90   Niece

was found to be diabetes mellitus with peripheral neuropathy, the evidence does not support the ALJ's conclusion that this condition was relatively mild before July 14, 2005.  He notes that the plaintiff's sister testified that she was helping him with personal needs in 2004, after his bypass surgery, and notes evidence that he received special consideration from his employer, such as additional breaks and permission to keep snacks at his work station.  Moreover, the claimant asserts that there was no legitimate medical basis for the ALJ's belief that his cardiac symptoms were resolved soon after his surgery.  The plaintiff charges that advice should have been obtained from a medical advisor concerning the onset date rather than relying on the ALJ's lay opinion, and that it was impermissible to rely on the non-examining state agency physician's assessment of August, 2004 and an opinion should have been obtained from a treating or examining doctor.

Social Security Ruling (SSR) 83-20, captioned "Onset of Disability," provides that an onset date should be set on the date when it is most reasonable to conclude that the claimant's impairment was sufficiently severe to prevent him from engaging in substantial gainful activity for a continuous period of 12 months.  SSR 83-20, p. 8.  A convincing rationale must be given for the date selected.  Id.  In the present case, very convincing evidence exists that the plaintiff's cardiac symptoms were not "severe" for a period of 12 months following his surgery given his denials of anginal pain to Dr. Kahwash in July, 2004 and denial of cardiac symptoms to the emergency

room physician in November, 2004. (Tr. 186, 212). In addition, there is apparently nothing in the notes from Dr. Sander in January, 2005 to indicate any cardiac complaints or limitations. (Tr. 233). Dr. Kahwash advised the plaintiff that his musculoskeletal chest pain would resolve completely when his wound was healed. (Tr. 189). Although the plaintiff did submit hospitalization records from as far back as 1987 reflecting complaints of chest pain, he was able to work until 2004 and there was no evidence at any point before the selected onset date that the condition was disabling for a full 12 months.

Regarding the testimony from the plaintiff's sister, the ALJ did consider her testimony, but correctly noted that she also indicated that his condition had worsened in December, 2005 or January, 2006. (Tr. 19). She also appeared to testify that her initial care of the plaintiff in 2004 was due to his chest wound not being healed. (Tr. 358). While her testimony could be interpreted as supporting an earlier onset date, a reasonable fact finder certainly could have concluded that Mr. Niece's diabetic condition did not become completely disabling until much later. The impact of lay evidence on oral testimony will be limited to the degree it is not contrary to the medical evidence of record. SSR 83-20, p. 7. The lack of any findings of cardiac or diabetic disability prior to the opinion of Dr. Janardan in March, 2006 is difficult to ignore. This physician did not even begin seeing the plaintiff until January, 2006. The ALJ's decision actually appears favorable to the plaintiff for this

07-90   Niece

reason, since the hospitalization of July 14, 2005 may only have been an isolated incident.  In any case, the defendant has carried his burden under Willbanks and shown substantial evidence to support the onset date selected.

There is also no merit to the plaintiff's insistence that the ALJ should have obtained the opinion of a medical advisor to infer the onset date, since the relevant portion of SSR 83-20 "contemplates situations when an individual claims disability and there is no development of the medical record on which the ALJ can rely to ascertain onset date." McClanahan v. Commissioner of Social Security, 193 Fed. Appx. 422 (6th Cir. 2006).  In the present case, there were two consultative physical examinations as well as opinions from two state agency reviewers, and while the plaintiff claims that it was improper to rely on the opinions of the state agency reviewers, it is not clear why the requested opinion of another non-examining medical advisor would have greater validity.

The decision will be affirmed.

This the 29th day of February, 2008.



Signed By:
*G. Wix Unthank*
**United States Senior Judge**